Next case on our calendar is Davis v. Allen. Mr. Jones, whenever you're ready. Good morning. May it please the court. My client, Deputy Sheriff Christopher Allen, appeals from the District Court's denial of his summary judgment motion on qualified immunity grounds. And a specific issue that's presented in this appeal is whether Deputy Allen is entitled to qualified immunity for his decision to allow his patrol dog, his canine, to bite Trevor Davis until Allen and his partner could physically access, that is, enter the room where Davis had been hiding, to restrain him themselves for the purpose of arresting him. Under the first prong of the qualified immunity standard, Mr. Davis bears the burden of establishing that Deputy Allen violated his Fourth Amendment rights. That is, specifically, that it was objectively unreasonable for Deputy Allen to leave the dog engaged until he could be physically restrained by the officers, that is, Mr. Davis. So, Mr. Jones, when one listens to, largely listens to, and a bit watches the video here, it's awfully hard to see this as a case where the facts are so unambiguously in favor of your client that the District Court was making a mistake in allowing this to move forward. I don't think anybody is arguing that the initial decision to use the dog was problematic. It's allowing the dog for the full two minutes to keep biting when, and there are all sorts of indicia of unreasonableness there, unreasonable seizure. You hear him, you hear the officer saying, come out in the hall and hold up your hands. Well, the man is unable to stand up. The dog has his arm. He can't do that. It's just, it's physically impossible. He hears the guy screaming in pain and accepting the facts as Mr. Davis presents them, it's possible to see that his hands are above his head. The fact that the dog couldn't be called off for the full two minutes, which honestly seems like an eternity as you're sitting there watching the video, it seems that that fact needs to be assessed by a jury. It's not a fact that is, again, so unambiguously in favor of Deputy Sheriff Allen that qualified immunity is appropriate. That's the Johnson against Jones decision. I think that the critical, well, several things in response. One, the underlying material historical facts are not in dispute. That is what Deputy Allen was doing, what Mr. Davis was doing at the critical moments. But I think you overstate the degree of consensus because it's true in all of these Fourth Amendment cases. The devil's in the details. And this case strikes me as similar to, say, the Alicia case. We have a bunch of cases where the person is simply unable to leave, whether they're in a swimming pool or whether they're cornered somewhere or whatever. And Mr. Davis here is in that bedroom. There's that box spring that you can see in the door. But he's not going anywhere. And as soon as the dog grabs him, it's very clear to the officers where he is. They don't need the dog anymore to locate him. They have weapons. They have tasers. They have all sorts of ways to protect themselves. And you hear it. A jury could see this as gratuitous infliction of pain. When the officers entered the trailer, they couldn't see Mr. Davis. And as they moved from the entryway to that back bedroom where Mr. Davis had hidden, they could only catch glimpses of him. That's not in dispute. When they got to the doorway of the bedroom where Deputy Allen could then see Mr. Allen in full, at least that's not disputed for the purposes of appeal, given his inability, the officers' inability to get through the doorway, given the- What does he think Mr. Davis is going to do with the dog latched onto his arm? His concern was, and it was objectively reasonable under the circumstances, his concern was that if he released the dog before he and his partner could get into the room, that Mr. Davis would then be, if there were a weapon hidden in the room, and the pictures of the room show that it would be impossible to know whether there was a weapon within Mr. Davis' room. Yeah, it's a mess. That's true. If he had released the dog before the officers were physically next to Mr. Davis, there would have been no way to control his hands, no way to be able to control his ability to access- Well, he's crippled by this time, you know, from the dog. He can't do anything with that hand. If the dog had been released- Right. The deputies would not have been able to control his movements, his other hand- I'm not sure that that fact is not contested on this record. Mr. Davis' own police practices expert conceded in his testimony that it would have been reasonable for the officers to be still concerned about the presence of a weapon and Mr. Davis' ability to access a weapon, and that an officer in that situation reasonably would have understood that he could not have controlled Mr. Davis' movements and his ability to access a weapon if the dog had been recalled before the officers were in the room. To drill down on that point, though, do we reduce the amount of force necessary depending on the threat? I believe that's kind of where we're going with the questioning, as to now that we've looked into the room, we see, we assess, did the officers or an objective officer have an opportunity to recalibrate the type of force necessary to still officer safety and to still be able to control the space? And I think as a general proposition, it's absolutely correct that at every point as force is being applied, an officer has to, as you put it, Judge, recalibrate as to whether that force is still reasonable. But again, without the ability to control Mr. Davis' movements, without the ability to get into the room- Why can't they withdraw and use pepper spray or something? Why can't they withdraw and see if Mr. Davis is now willing to cooperate? That's what their original goal was. They first just order him to come out. He could have had a weapon in his hand then, too. The question of whether lesser alternatives might have been available in retrospect, that ultimately doesn't answer the question of whether the force that was actually applied was objectively reasonable. That's clear in the case law. But as Judge Pryor was saying, though, the force that may have been reasonable at the beginning of the encounter may become unreasonable as the encounter progresses. I agree that just because it was reasonable to use the dog, to release the dog into the trailer in the first place, does not mean that it was necessarily reasonable to continue to allow the dog to be engaged. Right, so they could have backed up, called the dog off, communicated with Mr. Davis, without this extraordinary use of force against him. In a situation where it was reasonable to suspect that there was a weapon in the room. But then they would never have asked him to just come out to begin with. The arguments are a bit contradictory. The first thing they do, you know, we have Sheriff Canine announce yourself, or I'm going to send the dog into the house. You will be bit. And then he's essentially saying, come out. He says to him a number of times, come out with your hands up. At a point in time when they could not see into the room, could not see him fully, and reasonably said, if you come out with your hands up. Yeah. Something every officer would say in every situation. And as they move, and they continue to move closer to the room. But what's the guarantee that he's going to come out of the room with his hands up and not holding a gun in one of them? You know, the risk is still there. It's very risky to be a police officer, and the risk is still there in the verbal command. At the critical moment, by Mr. Davis's own expert's conclusion, it was objectively reasonable to be concerned about a weapon and Mr. Davis's ability to access a weapon. That's why the dog was left engaged until they could get into the room. The minute they were in the room, the dog was recalled. There was no further force used. And ultimately, on the second prong, it has to be beyond debate that an officer would have known that the law didn't allow him to use a dog in this way, in this specific circumstance. Mr. Jones, if I could ask you a quick question, which is, well, I don't know how quick it is. As I understand it, as Officer Allen was navigating his way into the room, he had a colleague with him, right? Yes. And his colleague had a rifle, is that correct? And did his colleague have a rifle trained on Mr. Davis? And if so, is that something? How does that factor into the analysis? The record isn't clear as to exactly how they were holding the weapons as they moved from the entryway to the back bedroom. But, again, the record is clear that they couldn't see into the room. They couldn't even see Mr. Davis fully. So if they can't see him, there's no way to point a weapon at him. When they get to the room, they can see Mr. Davis clearly, right? And so at that point, I take it that the other officer still had his weapon, and I think it was a rifle, trained on Mr. Davis. And I'm wondering whether that also is something that we need to consider as we try to consider the totality of the circumstances here. Well, the case law certainly says that that's a relevant consideration. But I think under the specific undisputed facts here, given the layout of that entryway into the bedroom, given the positioning of the box spring, it literally would have been possible for an officer standing behind an officer going through the doorway into the room to maintain cover, and that is point a weapon at Mr. Davis. And in that situation, the officers are choosing between the possibility of a gunfight, if in fact there had been a weapon in the room and Mr. Davis had been able to access it because the dog had been recalled, versus leaving the dog engaged for a few more seconds, however long it took for them to take off their vests and get into the room to stop the situation that way. And, again, the question isn't whether other force might have been used. It's whether the force that was used was objectively reasonable. Thank you, Mr. Jones. I'll give you a couple minutes in rebuttal. Thank you. Thank you. Mr. Student. Good morning, Your Honors. May it please the Court. On the point of this argument that Deputy Allen makes that he needed to maintain or he needed to gain physical control of Mr. Davis before he released the dog, that is conflicted or it contradicts the clearly established law in this case, and that's the law that comes from Becker v. Ulfreich and Miller v. Gonzalez. Under those cases, it's not a justification for a significant use of force on a compliant and non-resisting suspect to say we had to get him in handcuffs to make certain there wasn't a weapon. And Becker v. Ulfreich also gets into the issue of the possibility of a weapon, which is always the case in a felony arrest like happened in this case. I think before you get into the substantive law too much, I think it bears addressing the jurisdiction issue briefly. I think on this point, Smith v. Finkley is directly on point. That's a recent case, and in that case, this Court found that how the suspect was moving on the ground was a direct factual issue that was in dispute. And in addition, the level of threat the suspect posed because of that was a factual inference that the Court cannot make on an interlocutory qualified immunity appeal. And so based on that, the appeal in Smith v. Finkley was dismissed. I think that logic applies to this case point for point. And I think in order to conduct a full analysis under the Saucier v. Katz case, you need to have a clean, undisputed record with respect to the material facts, and we simply don't have this here. We don't know exactly how Mr. Davis was moving, how Deputy Allen perceived it from either the start of the bite or over the course of the bite. We have the body-worn camera recordings that show about eight seconds into the bite, Deputy Allen orders Davis to come out, which was impossible. At about ten seconds into the bite, there's confirmation from Deputy Allen and his partner that they can see hands, and during essentially the duration of the bite, Mr. Davis is screaming in pain, calling for help. A jury could clearly find that he was surrendering, compliant, not a threat, and that's during almost the duration of the bite. And if you watch the body-worn camera video and you listen to the audio, it's about halfway through at the one-minute point where the officers are actually at the threshold of the bedroom. They can see in. They can see his entire body. And, you know, at that point in time, the clearly established law that we have in Becker v. Elfreich, Miller v. Gonzalez, Alicia v. Thomas, and notwithstanding Johnson v. Scott, which is kind of the outlier case on this issue, I think it's clear at that point in time, at the very latest, that they should have called the dog off and asked Mr. Davis to do what they wanted him to do in the first place, which was walk out to him, walk out to the officers with his hands up. I think the speculation about weapons that is kind of the centerpiece of the defense argument here, it's undermined by the precedent in Becker as well as Ellis v. Winelda, Seventh Circuit case. In a case like this, there's always concern about weapons, felony arrest, and the plaintiff's police practices expert acknowledged as much when he was cross-examined by defense counsel, and I think that's a matter that a jury is going to have to consider in greater detail at trial. As far as how narrowly or broadly we define the clearly established law in the wake of the Supreme Court case Cassell v. Hughes, Strand v. Minshuk is directly on point. And I think the takeaway from Strand is that you don't need the exact, factual, novel scenario that you have, or else it wouldn't be qualified immunity, it'd be absolute immunity. And I think that the way the court defined the scope in Strand v. Minshuk is consistent with how the district court, in our case, Judge Connolly, defined the clearly established law in this case. If you have a suspect who is subdued, who's not resisting, or is at most passively resisting and doesn't pose a threat to officers, you cannot use the sort of significant force that a canine bite and hold represents. And I think those terms of art are sufficiently incorporated into the way that it's set out so that any reasonable officer would have noticed that what was done was unreasonable and unconstitutional. And I do think Johnson v. Scott, which is a case that the defense relies on a fair amount, is an outlier. It came before the other cases, Becker, Alicia, Strand, and each of those cases are quick to distinguish it because Johnson v. Scott involved kind of a bang-bang play where an officer released a dog just seconds after a suspect ostensibly surrendered. And the dog was taken off the bite within, I think, 5 to 10 seconds, if I'm recalling the case correct. And each of the cases that apply in this case, Becker, Miller, Alicia, they distinguish Johnson based on that, I think, that quick timeline that happened there. I think this case is most similar to Alicia v. Thomas where a suspect was cornered and trapped in an above-ground pool. He couldn't get out. He was not immediately accessible to officers like in our case, and yet still the court held you can't use a canine to bite and hold him until the officer has hands-on. That's a significant use of force, and if a reasonable officer would not perceive the suspect as a threat or as resisting, you can't use that degree of force. And as we know by Mr. Davis's injuries, a canine bite and hold is not deadly force. I know that issue was raised in Becker v. Elfreich, but it's clearly at the higher end of the spectrum. And the longer it goes on, it's just like a taser deployment or a baton hit. The longer it goes on or the more hits there are, the more severe that force is. And in this case, it had devastating consequences on Mr. Davis. And I think the district court defined the clearly established law just right, and this is at page 10 of their opinion, when they said the clearly established law cannot use significant force on a suspect who is subdued, attempting to surrender, or most passively resisting and presenting no risk of imminent harm. And the jury in this case is going to be tasked with finding whether Mr. Davis was attempting to surrender, whether he was resisting, and what degree of harm he may have posed, like in Smith v. Finkley. Those are factual inferences that we can't make at the interlocutory appeal stage. And so we respectfully made a motion for the appeal to be dismissed. And I think it's warranted given the facts in the law in this case. I don't have anything further I wanted to address unless the court has questions. Thank you very much, Mr. Student. Thank you. Mr. Jones, I'll give you two minutes on rebuttal. Thank you. On the jurisdictional issue, with respect to the Smith case the counsel cites, the majority opinion of Smith clearly identified a material dispute of fact as to what the subject, then the plaintiff, was doing in the moment before he was shot. Was he lunging for a weapon or was he putting his hands out to give himself up? That sort of material dispute of historical fact, what was happening, is not at issue here. Smith doesn't control, and there is jurisdiction. So are you saying that you agree that Mr. Davis was giving himself up while he was lying there? No, I think the distinction between Smith and this case is that in Smith, as the court made clear, the majority made clear, what the individual was doing, was he leaning down to go behind an air conditioning vent to access a weapon or was he putting his hands out and laying down on the ground as the officers had instructed him to do? That was a dispute of fact as to whether the force was objectively reasonable, but it fed into the question of whether or not there was an ongoing threat. That question couldn't be decided either because of that dispute of historical fact. Again, here there's no dispute as to what Mr. Davis was doing for the purposes of appeal, and given the undisputed facts as to what he was doing, the question of whether there was objectively considered a threat, an ongoing threat sufficient to warrant the force, that is capable of resolution on appeal as an issue of law. There does seem to be some disagreement about how much of Mr. Davis was visible to the officers, whether they could look in there once they got close and I guess his head was at a certain end of the table and he says his hands were over, could they see both hands? That seemed not entirely consistent to me when I looked at the briefs on both sides. For purposes of appeal, there's no dispute on that issue. So you're agreeing they could see his hands, they could see his face, and so if he had started to take one hand and move toward rummaging under the pillow to find a weapon, they would have seen him doing that? As Deputy Allen stood in the doorway, he was able to see Mr. Davis's body and his hands. That's not disputed for the purposes of appeal. So you agree, and so why, given that both Deputy Allen and his partner were armed, why wasn't that enough to protect them? Because he didn't have a gun in his hands at that moment. The Deputy Allen certainly would have testified, I saw a gun in his hand and that's why I kept the dog or something. There's no gun. So he sees that he's unarmed, hands above his head, and he can see him. And for the reasons I articulated previously about the positioning, the doorway, the box spring in the doorway, the ability of an officer to cover another as he was going into the room, and the fact that the officers basically were having to choose between leaving a dog engaged, which they felt could stop Mr. Davis from accessing a weapon, which Davis's expert conceded was true. The starting point is he doesn't have it. They're looking at an unarmed man who's lying down and a dog is inflicting significant pain on his arm. And the choice there is to let the dog go and not be able to control Mr. Davis's movements physically, other than to shoot him or to leave the dog engaged. But that would be true every time you have a person who's giving up. I'm sorry, Your Honor, I didn't hear the question. You would always be able to argue they might change their behavior. But the law is that if you've got somebody who's – you don't see a weapon in their hand and they are yielding to authority, then you can't use more force against them. And for the reasons that – and I won't try and do it now because I'm out of time, I know. We articulated in the brief the Alicia case, the Becker case, the Miller cases. They are distinguishable on their facts. You've handled that. Don't worry. We know your position. Okay. I'm done. Okay. Thank you very much, Mr. Jones. Thank you. We will take the case under advisement. Thank you.